RACHEL KAUFMAN (CAL BAR NO. 259353)
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
rachel@kaufmanpa.com

*Attorney for the Plaintiff and the Classes*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE VALDES, individually on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONWIDE REAL ESTATE EXECUTIVES, INC., a California corporation,<br><br>Defendant. | Case no.<br><br>**CLASS ACTION**<br><br>**JURY DEMAND** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

This case addresses a disturbing trend whereby real estate companies such as Defendant Nationwide Real Estate Executives, Inc. ("NREE") directs its real estate agents to cold call consumers without consent to generate business by violating the Telephone Consumer Protection Act ("TCPA").  Plaintiff Jorge Valdes ("Plaintiff Valdes" or "Valdes") brings this Class Action Complaint and Demand for Jury Trial against Defendant to stop it from directing its realtors to violate the TCPA by making unsolicited, autodialed calls to consumers *without their consent* and to

consumers whose phone numbers are registered on the National Do Not Call registry ("DNC") and to obtain injunctive and monetary relief for all persons injured by the conduct of NREE.  Plaintiff Valdes, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorney.

## PARTIES

1.      Plaintiff Jorge Valdes is a resident of Tustin, California.

2.      Defendant NREE is a California corporation with its headquarters located at 6850 Lincoln Avenue, Suite 200, Buena Park, California.  Defendant conducts business throughout this District and parts of the United States.

## JURISDICTION AND VENUE

3.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227.

4.      This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant NREE is incorporated and headquartered in this District, because Defendant NREE does business in this District and because the wrongful conduct giving rise to this case

was directed from and to this District. Venue is also appropriate because Plaintiff resides in this District.

## TCPA BACKGROUND

5.      As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." Barr v. Am. Ass'n of Political Consultants, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

7.      According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found,

automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

8.     While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

9.     "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

10.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

11.    By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

12.    The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

13.    Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

14.    The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15.    "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16.    "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone*

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

*Consumer Protection Act of 1991,* Notice of Proposed Rulema, CG Docket No. 02-278, at 2 (2016).[2]

17.     According to a respected robocall watch site, robocalls have increased by a whopping 494% in a four year span: from 8.9 billion in the last three quarters of 2015 to 43 billion in the same nine months of 2019. *See* YouMail Robocall Index, Historical Robocalls by Time, available at https://robocallindex.com/history/time/ (accessed Sept. 9, 2020).

18.     Encouraging consumers to hold telemarketers accountable, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

19.     In recent years a troubling trend has surfaced in the real estate industry whereby real estate companies such as Defendant's are training and directing their real estate agents to purchase lists of consumer phone numbers and to solicit their services by cold calling consumers on their cell phones without any form of consent.

20.     This trend has resulted in consumers being bombarded by unsolicited real estate solicitation calls and text messages without their consent in violation of the TCPA.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

## INTRODUCTION TO NREE

21.     NREE is an independently-owned California-based real estate agency that assists consumers in buying and purchasing property.[3]

22.     NREE set-up a training system for its agents and provides those agents with the tools necessary for real estate success:

 **Nationwide Real Estate Executives**
September 22, 2016 · 🌐

Whether you are looking to buy or sell, we challenge the status quo and created the industry's best training systems for Realtors® providing the most cutting edge tools necessary to succeed and provide the highest quality real estate services to each and every client.

The upside to this equation is that if our agents are successful, that means that their clients are happy, very happy.

Click here http://www.nationwideliving.com/about-nationwide to find out more about our company and contact us if you have any questions at all! We are here to help.                                                                 [4]

23.     All NREE agents operate under the banner name of Nationwide Real Estate Executives.

## NREE DIRECTS REALTORS TO MARKET NREE'S REALTY SERVICES BY BUYING LEADS AND COLD CALLING THEM USING AN AUTODIALER

24.     NREE provides online training for all of its agents. In fact, NREE states regarding their training university "We are obsessed with training. We invest

---

[3] https://www.linkedin.com/company/nationwide-real-estate-executives/about/
[4] https://www.facebook.com/pg/NationwideRealEstateExecutives/posts/?ref=page_internal

our resources into tools, training, and support because we operate under the belief that anyone can be successful in real estate."[5]

25.     NREE places great emphasis on having its agents engage in cold calling consumers to generate business.

26.     In a Facebook post from October 24, 2019, NREE claims that for those who have never cold called, they provide the environment to start out in:



[5] https://nrecareers.com/nationwide-university/
[6] https://www.facebook.com/pg/NationwideRealEstateExecutives/posts/?ref=page_internal

CLASS ACTION COMPLAINT
-8-

27.    NREE is very open about its cold calling practices, especially on Facebook.

28.    NREE provides its agents with advice on how to sound better when placing over 100 cold calls in a session:

**Nationwide Real Estate Executives**
May 8, 2019 · 🌐

This weeks tip; When cold calling standing can help you project your voice and help with the enunciation of your words. After 100 calls you can start to lose the energy in your voice. #nrela #happyprospecting #tonematters #tips

[7]

29.    NREE also draws attention to agents who put in extra effort for their cold calling and who experienced success from placing cold calls to consumers:

---

[7] *Id.*

CLASS ACTION COMPLAINT
-9-



**Nationwide Real Estate Executives - Tim Oyler, Regional VP of Sales** is 😎 feeling fabulous at Nationwide Real Estate Executive.

June 8, 2017 · Long Beach, CA · 🌐

One of or new agents that doesn't give up. Cold Calling solo and killing it. Way to go Christine.

[8]

---

[8] https://www.facebook.com/NRELiving/posts/

1
2
3
4
5
6
7
8
9
10
11
12
13
14



**Nationwide Real Estate Executives**
June 19, 2019 · 🌐

Calling prospect after prospect only to be met with indifference or disinterest can be discouraging at the least. But there are ways to sell more houses through this technique, and it all starts with having a right cold calling real estate scripts, just ask Allaina she has dial over 500 numbers, made 50 contacts, and 2 appts.

15    30.    NREE is also very open about when it gets its agents to engage in cold

16  calling, including "Friday Cold Calling" and the "Monday Morning Call Group:"

17
18
19
20
21
22
23
24
25

---
9

26  https://www.facebook.com/pg/NationwideRealEstateExecutives/posts/?ref=page_i
27  nternal

28





31.    Tim Oyler, Regional Vice President of Sales for NREE posted a video on Facebook stating, "Cold Calling The right way to start off the week:"

---

[11] https://www.facebook.com/watch/?v=1928008867509256



**Nationwide Real Estate Executives - Tim Oyler, Regional VP of Sales**
June 5, 2017 · 🌐

Cold Calling The right way to start off the week. #coldcalling #realtorsofinstagram #realestate #nationwiderealestateexecutives #makingmoney #superstaragent

32.     In the above video which shows 7 agents engaged in cold calling,

Oyler says the following:

"Good morning everyone. Tim Oyler Nationwide Real Estate Executives in

Long Beach California. Well, right around the corner, on the other side of

this wall, yeah that's my mirror, uh, um, we have Monday activity

happening. **It happens Monday, Tuesday and Wednesdays. And it is cold**

**calling. We have a special room that's set-up** and we're just going to take

a visit and see what is happening."[13] (emphasis added)

---

[12] https://www.facebook.com/pg/NRELiving/posts/?ref=page_internal
[13] *Id.*

33.     In another Facebook video, Oyler speaks about a cold calling group that happened at NREE in which 8 agents placed well over 1000 calls in total, presumably with an autodialer:





34.     In the above video, Oyler states:

"Good afternoon from Nationwide Real Estate Executives in Long Beach. This is Tim Oyler, and, ladies and gentlemen, here is what the cold calling room looks like. It's a little bit of a mess but we will pick it up and get it ready for tomorrow. **We had 8 agents participate in our cold calling. We do have a cold calling group Monday, Tuesday 9 – 12 and we're gonna**

---

[14] https://www.facebook.com/NRELiving/videos/1774660979510713/

**be extending it because of popular demand to Wednesday between 9 and 12… We had 8 agents with 502 dials, 326 dials, 115, 115, 100…"**[15] (emphasis added)

35.     NREE endorses training from other real estate coaches such as Mike Ferry who train agents to block a few hours each day to make cold calls, including to consumers with expired listings. NREE held an event "Real Estate Phone Skills Workshop" on October 2018, the same month the Plaintiff was called, which specifically ratified trainers like Mike Ferry who train agents in cold calling:

"Whether you are new, learning real estate, or a top producer, your phone skills are CRITICAL to building your business. Why don't most agents make the follow-up calls they should? There are many reasons, but come to this event and you will eliminate 2 major reasons. First, it will be in your schedule for that day. Second, let's have some fun together while generating more business. Plus, we'll have our coaches on the floor to see how we can help you be more effective. Learn the best scripts that agents are using to set appointments and get listings. If you are in a current coaching program, such as Mike Ferry, Tom Ferry, Brian Buffini, Mark Proctor, your coach will love hearing that you are diligently making the calls you know you need to make.

---

[15] *Id.*

Agents from other companies welcome as more people brings more energy and you'll help us in our calling as well."[16]

36.    The agent that called Plaintiff Diane Mazzocco has received several years of training from Mike Ferry.[17]

37.    Diane Mazzocco claims she speaks to around 300-500 people every week.[18]

38.    Upon information and belief, NREE provides its agents with an autodialer for placing cold calls to consumers.

39.    In the Terms document of its main website, NREE makes reference to placing autodialed and pre-recorded calls to consumers:

**TCPA & Registration Terms:**

If you choose to register on our website you hereby consent to receive autodialed and/or pre-recorded telemarketing calls and/or text messages on provided number from or on behalf of NRE Executives or it's participating lenders or affiliates; from the following telephone number: 714-276-8454, or from other numbers related to or affiliated with the company, which may use an automatic telephone dialing system, an artificial or prerecorded voice or text message. Standard message and data rates may apply. You acknowledge that you may receive emails or communications with mortgage-related information. You also certify that the provided number is your actual cell phone number and not that of anyone else. Furthermore, if your cell phone number changes, we ask for prompt notice of the new number.    [19]

---

[16] https://www.evensi.us/real-estate-phone-skills-workshop-nationwide-executives/272451762
[17] https://www.prweb.com/releases/engel_volkers_long_beach_welcomes_industry_power_player/prweb16022588.htm
[18] https://www.linkedin.com/in/diane-mazzocco-5575b17b/
[19] https://www.nreliving.com/terms.php

## TCPA LEGALITY OF UNSOLICITED AUTODIALED CALLS

40.     As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

41.     Yet in violation of this rule, Defendant NREE fails to obtain any express written consent prior to placing autodialed calls to cellular telephone numbers such as those of Plaintiff.

42.     To make matters worse, Defendant NREE is directing realtors to engage in cold calling and place unsolicited calls to consumers using autodialers.

## PLAINTIFF VALDES' ALLEGATIONS

43.     Plaintiff Valdes registered his cell phone on the DNC on April 27, 2005.

44.     Plaintiff uses his cell phone for personal use.

45.     Plaintiff Valdes had his property listed for sale, but he took the listing down from the Multiple Listing Service.

46.     This property was determined to be an expired listing according to systems like RedX and Vulcan7, causing Plaintiff Valdes to be inundated with unsolicited calls from real estate agents.

47.     Plaintiff Valdes did not have his phone numbers listed on the original property listing.

48.     On October 29, 2018, Plaintiff Valdes received an unsolicited autodialed call from a NREE agent from 562-522-2722 at 9:18 AM. The purpose of the agent calling was to solicit the Plaintiff to list his home with the agent's brokerage.

49.     Plaintiff noticed a pause when he picked up the line prior to hearing the agent answer.

50.     562-522-2722 belongs to Diane Mazzocco, a real estate agent who was working for NREE at the time she placed the unsolicited calls to Plaintiff Valdes.[20]

51.     On October 30, 2018 at 8:17 AM and again at 8:18 AM, Mazzocco placed more autodialed calls to Plaintiff Valdes' cell phone.  Valdes answered each of these calls.

52.     In total, Plaintiff Valdes received 3 unsolicited, autodialed calls from NREE agent Diane Mazzocco.

---

[20] https://www.gloopla.com/US/Long-Beach/521657371273167/Diane-Mazzocco

53.     Others have reported similar unsolicited calls from this particular phone number 562-522-2722.[21] One person reported that "The message was an attempt to get a listing."[22]

54.     Plaintiff Valdes was not looking to purchase or sell a property.

55.     Plaintiff Valdes does not have a prior business relationship with Defendant NREE and never consented to calls from any NREE agents.

56.     Simply put, the Defendant did not obtain Plaintiff's prior express written consent to place any solicitation telephone calls to him through autodialed phone calls.

57.     The unauthorized telephone calls from the Defendant harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Valdes's use and enjoyment of his cellular phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

58.     See redress for these injuries, Valdes brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed phone calls to cellular phone numbers.

---

[21] https://findwhocallsyou.com/5625222722?CallerInfo
[22] https://www.callercenter.com/562-522-2722.html

# CLASS ALLEGATIONS

## Class Treatment Is Appropriate for Plaintiff's TCPA Claims Arising From Calls Made by NREE Agents at NREE's Direction

59.     Plaintiff Valdes brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Classes:

> **Autodialed No Consent Class:** All persons in the United States who, from four years prior to the filing of this action through the date of class certification, (1) one or more NREE agents called on behalf of NREE, (2) to the person's cellular telephone, (3) using dialing equipment substantially similar to the dialing equipment used to call Plaintiff, and (4) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant NREE claims it supposedly obtained prior express written consent to call Plaintiff, or (b) it did not obtain prior express written consent.

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action (1) one or more NREE agents called on behalf of NREE, (2) two more times in the aggregate within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for the purpose of selling Defendant's services, and (5) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant's claim they supposedly obtained prior express written consent to call Plaintiff, or (b) they did not obtain prior express written consent.

60.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or

former employees, officers and directors; (3) Plaintiff's attorney; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

61.   **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

62.   **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether NREE agents called Plaintiff and members of the Autodialed No Consent Class using an autodialer;

(b) whether the agents made those calls without prior express written consent;

(c) whether agents placed more than one phone call to Plaintiff and members of the Do Not Call Registry Class who registered their phone numbers on the DNC;

(d) whether Defendant is vicariously liable for the agents' calls;

(e) whether the calls constitute TCPA violations; and

(f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

63.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Classes.

64.    **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes  and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual

prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Valdes and the Autodialed No Consent Class)

65.     Plaintiff repeats and realleges paragraphs 1 through 64 of this Complaint and incorporates them by reference herein.

66.     NREE realtors placed unwanted solicitation calls to Plaintiff and the other members of the Autodialed No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

67.     These solicitation telephone calls were made *en masse* without the consent of the Plaintiff and the other members of the Autodialed No Consent Class.

68.     Defendant NREE has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other

members of the Autodialed No Consent Class are each entitled to a minimum of

$500 in damages, and up to $1,500 in damages, for each violation.

## SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the Do Not Call Registry Class)

69.     Plaintiff repeats and realleges paragraphs 1 through 64 of this

Complaint and incorporates them by reference herein.

70.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c),

provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a]

residential telephone subscriber who has registered his or her telephone number on

the national do-not-call registry of persons who do not wish to receive telephone

solicitations that is maintained by the federal government."

71.     Any "person who has received more than one telephone call within

any 12-month period by or on behalf of the same entity in violation of the

regulations prescribed under this subsection may" may bring a private action based

on a violation of said regulations, which were promulgated to protect telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which they

object.  47 U.S.C. § 227(c).

72.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to

be initiated, telephone solicitations to telephone subscribers such as Plaintiff and

the Do Not Call Registry Class members who registered their respective telephone

numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

73.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

74.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Valdes, individually and on behalf of the Classes, prays for the following relief:

   a.  An order certifying the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorney as Class Counsel;

b.  An award of actual and/or statutory damages for the benefit of Plaintiff and the Classes, and costs;

c.  An order declaring that Defendant's actions, as set out above, violate the TCPA;

d.  An injunction requiring the Defendant to cease all unsolicited calling activity, to implement sufficient TCPA related policies and procedures, and to otherwise protect the interests of the Classes; and

e.  Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**JORGE VALDES**, individually and on behalf of those similarly situated individuals

Dated: September 10, 2020

By: /s/ *Rachel E. Kaufman*
Rachel E. Kaufman (Cal Bar no. 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorney for Plaintiff and the Classes*