BRIAN M. BOYNTON
Acting Assistant Attorney General

ERIC WOMACK
Assistant Director, Federal Programs Branch

JOSHUA C. ABBUHL (D.C. Bar No. 1044782)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
(202) 616-8366 (tel.)
(202) 616-8470 (fax)
Joshua.Abbuhl@usdoj.gov

*Counsel for the United States of America*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JORGE VALDES, individually and on behalf of all others similarly situated, | Case No. 8:20-cv-01734-DOC-KES |
| *Plaintiff*, | **UNITED STATES OF AMERICA'S BRIEF IN SUPPORT OF THE CONSTITUTIONALITY OF THE TELEPHONE CONSUMER PROTECTION ACT** |
| v. |  |
| NATIONWIDE REAL ESTATE EXECUTIVES, INC., | Judge:  Hon. David O. Carter |
| *Defendant*. | Date:  April 12, 2021 |
|  | Time:  8:30 a.m. |
|  | Courtroom:  9D |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................. 1

BACKGROUND ............................................................................................... 2

I.    Statutory Background and the *AAPC* Decision ..................................... 2

II.   Judicial Decisions After *AAPC* ........................................................... 4

III.  Procedural Background ........................................................................ 5

ARGUMENT .................................................................................................... 6

I.    The Court Should First Resolve Nonconstitutional Grounds For
      Decision .............................................................................................. 6

II.   Defendant May Be Held Liable For Calls Sent Before the Supreme
      Court's Decision in *AAPC* .................................................................. 6

      A.    Because The Government-Debt Exception Is Unconstitutional, It
            Has No Effect on the Autodialer Restriction, Which Has Been
            Fully  Operative at All Relevant Times ......................................... 7

      B.    Defendant's Countervailing Arguments Are Meritless ............... 10

CONCLUSION ............................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*AAPC v. FCC,*
  923 F.3d 159 (4th Cir. 2019) .................................................................. 12

*Abramson v. Fed. Ins. Co.,*
  No. 8:19-cv-2523, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020) ................................. 4

*Arthrex, Inc. v. Smith & Nephew Inc.,*
  953 F.3d 760 (Fed. Cir.),
  *cert. granted sub nom. United States v. Arthrex, Inc.,* 141 S. Ct. 549 (2020) ....................... 17

*Barr v. American Association of Political Consultants (AAPC),*
  140 S. Ct. 2335 (2020) ...................................................................... *passim*

*Boisvert v. Carnival Corp.,*
  8:20-cv-2076, 2021 U.S. Dist. LEXIS 47397 (M.D. Fla. Mar. 12, 2021) .................... 5

*Bonkuri v. Grand Caribbean Cruises, Inc.,*
  No. 20-cv-60638, 2021 WL 612212 (S.D. Fla. Jan. 19, 2021) ........................ 5

*Chicago, I. & L. Ry. Co. v. Hackett,*
  228 U.S. 559 (1913) .......................................................................... 9

*Creasy v. Charter Commc'ns, Inc.,*
  489 F. Supp. 3d 499 (E.D. La. 2020) ....................................................... 4

*Dorchy v. Kansas,*
  264 U.S. 286 (1924) ......................................................................... 10

*Duguid v. Facebook, Inc.,*
  926 F.3d 1146 (9th Cir. 2019) ............................................................... 12

*Eberle v. Michigan,*
  232 U.S. 700 (1914) ................................................................... 7, 8, 12, 17

*FCC v. Fox Television Stations, Inc.,*
  567 U.S. 239 (2012) ......................................................................... 14

*Frost v. Corp. Comm'n of Okla.,*
  278 U.S. 515 (1929) ..................................................................... *passim*

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ................................................................................. 14, 15

*Gulf Oil Co. v. Bernard,*
    452 U.S. 89 (1981) ..................................................................................... 6

*Harper v. Va. Dep't of Tax'n,*
    509 U.S. 86 (1993) .................................................................................. 9, 17

*Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.,*
    No. 5:20-cv-38, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020) ...................... 4

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,*
    18 FCC Rcd. 14014 (2003) ......................................................................... 3

*James B. Beam Distilling Co. v. Georgia,*
    501 U.S. 529 (1991) ................................................................................... 9

*Less v. Quest Diagnostics, Inc.,*
    No. 3:20-cv-2546, 2021 WL 266548 (N.D. Ohio Jan. 26, 2021) .................... 5

*Lidas, Inc. v. United States,*
    238 F.3d 1076 (9th Cir. 2001) .................................................................. 10

*Lindenbaum v. Realgy, LLC,*
    No. 1:19-cv-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020) .................. 4

*Massaro v. Beyond Meat, Inc.,*
    No. 3:20-cv-510, 2021 WL 948805 (S.D. Cal. Mar. 12, 2019) ...................... 5

*McCurley v. Royal Sea Cruises, Inc.,*
    No. 17-cv-986, 2021 WL 288164 (S.D. Cal. Jan. 28, 2021) ......................... 5

*Miles v. Medicredit, Inc.,*
    No. 4:20-cv-1186, 2021 WL 1060105 (E.D. Mo. Mar. 18, 2021) ................... 5

*Mims v. Arrow Fin. Servs., LLC,*
    565 U.S. 368 (2012) ................................................................................... 2

*Minnesota v. Mille Lacs Band of Chippewa Indians,*
    526 U.S. 172 (1999) ................................................................................. 10

*Police Department of Chicago v. Mosley,*
    408 U.S. 92 (1972) ................................................................................... 15

*Rieker v. Nat'l Car Cure, LLC,*
    No. 3:20-cv-5901, 2021 WL 210841 (N.D. Fla. Jan. 5, 2021) .......................5

*Rivers v. Roadway Exp., Inc.,*
    511 U.S. 298 (1994)....................................................................... 9, 10, 17

*Seila Law, LLC v. Consumer Financial Protection Bureau,*
    140 S. Ct. 2183 (2020) ..............................................................................16

*Sessions v. Morales-Santana,*
    137 S. Ct. 1678 (2017) ..............................................................................15

*Shen v. Tricolor Cal. Auto Grp., LLC,*
    No. 20-cv-7419, 2020 WL 7705888 (C.D. Cal. Dec. 17, 2020)....................4

*Stoutt v. Travis Credit Union,*
    No. 2:20-cv-1280, 2021 WL 99636 (E.D. Cal. Jan. 12, 2021),
    *granting mot. to certify appeal,* 2021 WL 1143612 (Mar. 25, 2021) .....................5

*Trujillo v. Free Energy Sav. Co.,*
    No. 5:19-cv-2072, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020)...........................4-5

*United States v. Jackson,*
    390 U.S. 570 (1968)......................................................................... 8, 12, 17

*United States v. Miselis,*
    972 F.3d 518 (4th Cir. 2020) .............................................................. 10, 15

**STATUTES**

47 U.S.C. § 227 ................................................................................. 1, 3, 5

47 U.S.C. § 608 ...........................................................................................3

Bipartisan Budget Act of 2015,
    Pub. L. No. 114-74, 129 Stat. 584.............................................................3

Dodd-Frank Wall Street Reform and Consumer Protection Act,
    Pub. L. No. 111-203, 124 Stat. 1376 (2010) ..........................................16

Model Penal Code § 2.04 .........................................................................14

Telephone Consumer Protection Act of 1991,
    Pub. L. No. 102-243, 105 Stat. 2394........................................................2

**FEDERAL RULES**

Fed. R. Civ. P. 5.1.................................................................................................5

**REGULATIONS**

47 C.F.R. § 64.1200............................................................................................5

**INTRODUCTION**

Since 1991, the Telephone Consumer Protection Act ("TCPA") has prohibited the use of certain automated technologies in making calls to cell phones absent the consent of the person being called. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (the "autodialer restriction"). There is no dispute that the autodialer restriction was valid when enacted. In a 2015 amendment, Congress added an exception to the statute to allow the use of autodialers for calls made to collect debts owed to or guaranteed by the United States without the consent of the person being called (the "government-debt exception"). Last year, in *Barr v. American Association of Political Consultants* (*AAPC*), 140 S. Ct. 2335 (2020), the Supreme Court held that the government-debt exception is content based and severed the exception from the remainder of the statute. Thus, in light of *AAPC*, there is also no dispute that a call or text made today in violation of the autodialer restriction would subject a robocaller to liability. *See id.* at 2353 (plurality op.) ("With the government-debt exception severed, the remainder of the law is capable of functioning independently and thus would be fully operative as a law.").

Nonetheless, Nationwide Real Estate Executives, Inc. ("Defendant") argues that it would be unconstitutional to apply the autodialer restriction to the calls at issue in this case because Defendant made them after the government-debt exception was enacted but before the Court's decision in *AAPC*. According to Defendant, this time period (roughly 2015-2020) amounted to a regulatory donut hole in which the TCPA cannot constitutionally be enforced against any robocaller because of the presence of the government-debt exception, even though there is no dispute that the autodialer restriction was fully constitutional before and after that time period.

This result was squarely rejected in the *AAPC* plurality opinion, in which three Justices confirmed that the Court's decision holding the government-debt exception invalid "does not negate the liability of parties who made robocalls" prior to the Court's decision, *id.* at 2355 n.12, and neither of the opinions concurring in the judgment with

respect to severability disputed that conclusion, *see id.* at 2357 (Sotomayor, J.); *id.* at 2363 (Breyer, J.). And although three district court opinions have ignored that clear direction and held that calls and texts made before the government-debt exception's severance are immune from the TCPA, a substantial majority of district courts – including all district courts to have considered the issue in this circuit – have rejected Defendant's argument that the autodialer restriction was unenforceable for this five-year period.

Defendant's argument should also be rejected by this Court because it runs counter to the rule that "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *AAPC*, 140 S. Ct. at 2353 (plurality op.) (quoting *Frost v. Corp. Comm'n of Okla.*, 278 U.S. 515, 526-27 (1929)). In circumstances like these, in which the pertinent statute was valid as originally enacted, an unconstitutional amendment is "powerless to work any change in the existing statute," and the original "statute must stand as the only valid expression of the legislative intent." *Frost*, 278 U.S. at 526-27. Based on that rule, the Supreme Court has allowed a finding of liability under statutes that were valid when enacted but to which invalid amendments had been promulgated before the time of the alleged violation.

## BACKGROUND

### I.    Statutory Background and the *AAPC* Decision

"Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-72 (2012); *see* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5)-(6), 105 Stat. 2394, 2394. As pertinent here, the TCPA's autodialer restriction makes it unlawful:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service[.]

47 U.S.C. § 227(b)(1)(A)(iii). This provision has long been interpreted to apply to both phone calls and text messages. *See In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 (2003).

In 2015, Congress amended the TCPA to provide that the autodialer restriction does not apply to calls made solely to collect a debt owed to or guaranteed by the United States (the "government-debt exception"). *See* Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a)(1), 129 Stat. 584, 588. The Communications Act of 1934 contains a severability provision (covering the TCPA), which states that "[i]f any provision of this chapter . . . is held invalid, the remainder . . . shall not be affected." 47 U.S.C. § 608.

In July 2020, the Supreme Court held in *AAPC* that the government-debt exception was content-based and violated the First Amendment. 140 S. Ct. at 2352 (plurality op.); *id.* at 2364 (Gorsuch, J.) (concurring as to that conclusion). However, the Court rejected the argument that the presence of the government-debt exception meant that the overall restriction on autodialed calls should be invalidated. *See id.* at 2348-49 (plurality op.); *id.* at 2362 (Breyer, J.) (concurring in judgment in part and dissenting in part) (agreeing that "the government-debt exception provides no basis for undermining the general cell phone robocall restriction"). The Court further held that the government-debt exception was severable, and thus "the correct result in this case is to sever the . . . exception and leave in place the longstanding robocall restriction." *Id.* at 2355 (plurality op.); *see also id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer J.) (concurring in judgment with respect to severability and dissenting in part). As the plurality explained, "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *Id.* at 2353 (quoting *Frost*, 278 U.S. at 526-27).

The plurality opinion contained a footnote in which three Justices discussed the effect that severing the government-debt exception would have on parties' liability for prior violations of the autodialer restriction. The opinion explained that "although our

1   decision means the end of the government-debt exception, no one should be penalized

2   or held liable for making robocalls to collect government debt after the effective date of

3   the 2015 government-debt exception and before the entry of final judgment by the Dis-

4   trict Court . . . or such date that the lower courts determine is appropriate." *Id.* at 2355

5   n.12. However, the plurality continued by flatly stating that "[o]n the other side of the

6   ledger, our decision today does not negate the liability of parties who made robocalls

7   covered by the robocall restriction." *Id.* Neither of the separate opinions concurring with

8   respect to severability questioned that conclusion. *See id.* at 2357 (Sotomayor, J.) (con-

9   curring in judgment); *id.* at 2363 (Breyer, J.).

10   **II.    Judicial Decisions After *AAPC***

11          Subsequent to the Supreme Court's decision in *AAPC*, several defendants moved

12   to dismiss complaints that sought enforcement of the TCPA against calls and text mes-

13   sages made after the government-debt exception was added but before *AAPC* was de-

14   cided. Initially, three district courts agreed with this argument and dismissed TCPA com-

15   plaints to the extent they sought damages for calls and texts made during this time pe-

16   riod. *See Creasy v. Charter Commc'ns, Inc.*, 489 F. Supp. 3d 499 (E.D. La. 2020); *Lindenbaum

17   v. Realgy, LLC*, No. 1:19-cv-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020); *Hussain

18   v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-cv-38, 2020 WL 7346536 (M.D. Fla.

19   Dec. 11, 2020).[1] However, since that batch of early decisions, every district court to have

20   addressed the issue – including several courts in the Ninth Circuit – have rejected the

21   argument that robocallers can avoid liability for autodialed calls and texts made before

22   the government-debt exception's severance.[2] Indeed, the same district court judge who

_____

[1] Defendants in these cases did not timely notify the government of their consti-
tutional challenges and the United States accordingly had no opportunity to intervene
in the district courts. The *Lindenbaum* decision has been appealed, and the United
States has intervened in the Sixth Circuit and filed a brief arguing that the decision be-
low is incorrect.

[2] *See Abramson v. Fed. Ins. Co.*, No. 8:19-cv-2523, 2020 WL 7318953 (M.D. Fla.
Dec. 11, 2020); *Shen v. Tricolor Cal. Auto Grp., LLC*, No. 20-cv-7419, 2020 WL 7705888
(C.D. Cal. Dec. 17, 2020); *Trujillo v. Free Energy Sav. Co.*, No. 5:19-cv-2072, 2020 WL

dismissed the TCPA complaint in *Hussain* has more recently denied a defendant's request seeking to dismiss a TCPA complaint on identical grounds. *See Boisvert v. Carnival Corp.*, 8:20-cv-2076, 2021 U.S. Dist. LEXIS 47397, at *4 (M.D. Fla. Mar. 12, 2021) ("Upon further reflection, the Court departs from its earlier opinion because, since the Court's Order in *Hussain*, every court faced with this same issue has concluded that a plaintiff may continue to bring § 227(b) claims post-*AAPC*.").

### III.   Procedural Background

Plaintiff Jorge Valdes filed his operative complaint on September 10, 2020, asserting violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200. ECF No. 1. Defendant moved to dismiss on December 31, 2020. ECF No. 11 ("Def. Br."). Defendant argued that Plaintiff's claim under 47 U.S.C. § 227(b)(1)(A)(iii) should be dismissed because (according to Defendant) *AAPC* rendered the autodialer restriction unconstitutional during the time period in which Defendant allegedly called Plaintiff. *Id.* at 5-10. Defendant further argued that both Plaintiff's 47 U.S.C. § 227(b)(1)(A)(iii) claim and 47 C.F.R. § 64.1200 claim should be dismissed because Defendant did not directly make the calls at issue and cannot be held vicariously liable for the calls. *Id.* at 16-22.

On January 7, 2021, Plaintiff filed a notice of constitutional question indicating that Defendant's motion to dismiss raised a constitutional challenge to the TCPA. ECF No. 14; *see* Fed. R. Civ. P. 5.1. Defendant objected to that notice. ECF No. 15. On February 26, 2021, Plaintiff, Defendant, and the United States stipulated that the United States should have until April 7, 2021 to determine whether to intervene in this case.

8184336 (C.D. Cal. Dec. 21, 2020); *Rieker v. Nat'l Car Cure, LLC*, No. 3:20-cv-5901, 2021 WL 210841 (N.D. Fla. Jan. 5, 2021); *Stoutt v. Travis Credit Union*, No. 2:20-cv-1280, 2021 WL 99636, (E.D. Cal. Jan. 12, 2021), *granting mot. to certify appeal*, 2021 WL 1143612 (Mar. 25, 2021); *Bonkuri v. Grand Caribbean Cruises, Inc.*, No. 20-cv-60638, 2021 WL 612212 (S.D. Fla. Jan. 19, 2021); *Less v. Quest Diagnostics, Inc.*, No. 3:20-cv-2546, 2021 WL 266548 (N.D. Ohio Jan. 26, 2021); *McCurley v. Royal Sea Cruises, Inc.*, No. 17-cv-986, 2021 WL 288164 (S.D. Cal. Jan. 28, 2021); *Massaro v. Beyond Meat, Inc.*, No. 3:20-cv-510, 2021 WL 948805 (S.D. Cal. Mar. 12, 2019); *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186, 2021 WL 1060105 (E.D. Mo. Mar. 18, 2021).

ECF No. 26. However, Defendant noted that "[s]hould the United States of America attempt to intervene in this case, Defendant intends to oppose said intervention." *Id.* ¶ 5. The United States stated that if it were to decide to intervene in this case, it would file a "notice of intervention, which will explain why the United States has a right to intervene." *Id.* ¶ 7. The United States filed that notice of intervention earlier this day.

The Court granted the parties' stipulation, stating "[t]he United States has until April 7, 2021 to determine whether to intervene in this case." ECF No. 28.

## ARGUMENT

### I.     The Court Should First Resolve Nonconstitutional Grounds For Decision

As an initial matter, this Court should not address Defendant's constitutional challenges until it resolves all potential nonconstitutional issues. "[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981).

In addition to its constitutional challenges, Defendant argues that the complaint should be dismissed on non-constitutional grounds. *See* Def. Br. at 16-22. As a matter of constitutional avoidance, the Court should first address these non-constitutional grounds of decision, which may obviate the need to decide the constitutional question.

### II.    Defendant May Be Held Liable For Calls Sent Before the Supreme Court's Decision in *AAPC*

In holding that the government-debt exception was unconstitutional and severable from the remainder of the TCPA, the Supreme Court in *AAPC* affirmed the validity of the TCPA's prohibition on making autodialed calls to cell phones without the consent of the person being called. *See* 140 S. Ct. at 2349, 2353 (plurality op.). The plurality further explained that the Court's opinion "does not negate the liability of parties who made robocalls" prior to the Court's decision. *Id.* at 2355 n.12. Therefore, if the Court reaches the constitutional question, it should hold (consistent with *AAPC*) that Defendant may

be held liable for violations of the autodialer restriction that occurred after the enactment of the government-debt exception and prior to the Supreme Court's decision in *AAPC*.

### A. Because The Government-Debt Exception Is Unconstitutional, It Has No Effect on the Autodialer Restriction, Which Has Been Fully Operative at All Relevant Times

There is no dispute that the autodialer restriction was valid before the enactment of the government-debt exception and that it is likewise valid and enforceable today. Defendant urges, however, that the autodialer restriction was rendered unenforceable for the period of time between the enactment of the government-debt exception and the Court's determination in *AAPC* that the exception is severable. *See* Def. Br. at 5-10.

That view cannot be squared with *AAPC* and the Supreme Court's prior decisions concerning the effect of invalid amendments to constitutional statutes. The Supreme Court has long made clear that an unconstitutional amendment is "powerless to work any change in the existing statute," and that the original "statute must stand as the only valid expression of the legislative intent." *Frost*, 278 U.S. at 526-27. Thus, the validity of a provision "c[an] not be impaired by the subsequent adoption of what were in form amendments, but, in legal effect, were mere nullities." *Eberle v. Michigan*, 232 U.S. 700, 705 (1914).

Citing those principles, *AAPC* confirmed the continuing validity of the autodialer restriction, explaining that "an unconstitutional statutory amendment" like the government-debt exception "'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." 140 S. Ct. at 2353 (plurality op.) (quoting *Frost*, 278 U.S. at 526-27). *AAPC* further concluded that the impermissibly content-based government-debt amendment was severable from the remainder of the statute, *see id.* at 2349; *id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J.) (concurring in judgment with respect to severability and dissenting in part), and that its enactment did not have any effect on the concededly valid restrictions already in effect, *id.* at 2348-49

1    (plurality op.) (rejecting the suggestion that the amendment "betray[ed] a newfound lack
2    of genuine congressional concern for consumer privacy" that called the autodialer re-
3    striction into doubt).

4          Prior Supreme Court decisions applying those principles confirm that a defendant
5    may be liable for violating a provision notwithstanding the enactment of an unconstitu-
6    tional amendment. In *Eberle*, the Court affirmed the petitioner's conviction under a
7    Michigan law prohibiting the manufacture of alcohol even though amendments to the
8    law enacted prior to the alleged violation were inconsistent with principles of equal pro-
9    tection. 232 U.S. at 706. The Court explained that the original "statute had been held to
10   be constitutional, and prohibited, without discrimination, the manufacture of all liquors.
11   That valid act the defendants violated, and their conviction cannot be set aside" based
12   on the enactment of unconstitutional amendments to the rule. *Id.* Likewise, in *United*
13   *States v. Jackson*, 390 U.S. 570, 591 (1968), the Court held that the defendants could be
14   tried under the Federal Kidnapping Act for alleged violations of its original terms, which
15   prohibited the interstate transport of kidnapped individuals, notwithstanding the uncon-
16   stitutionality of an amendment that conditioned the possibility of capital punishment on
17   the exercise of the right to trial by jury. In holding the capital punishment clause invalid
18   and severable from the remainder of the statute, *id.* at 583, 586, the Court confirmed
19   that "the unconstitutionality of that clause does not require the defeat of the law as a
20   whole," *id.* at 586. And the Court held that, notwithstanding the unconstitutional amend-
21   ment, "[t]he appellees may be prosecuted for violating" the original terms of the Act. *Id.*
22   at 591.

23         Defendant's position cannot be reconciled with the holdings in *Eberle* and *Jackson*.
24   In each case, the defendant allegedly violated a law that was constitutional as originally
25   enacted. *See AAPC*, 140 S. Ct. at 2353. And in each case, the violation of the original
26   provision occurred after the legislature had enacted an amendment that was later held

27

28

to be invalid and severable from the statute. Thus, the principles that provided for liability in *Eberle* and *Jackson* likewise allow that result here.

Defendant's argument is also at odds with longstanding principles of judicial review insofar as Defendant suggests that the *AAPC* decision altered the law. *See, e.g.*, ECF No. 22 ("Def. Reply"), at 13. When the "Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law," and it is therefore "not accurate to say that the Court's decision . . . 'changed' the law that previously prevailed." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313 n.12 (1994). An interpretation of a statute in a judicial opinion is a statement of "what the law *is*," not "what it is today *changed to*, or what it will *tomorrow* be." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 549 (1991) (Scalia, J., concurring in judgment). Accordingly, when the Supreme Court holds that part of a statute is inconsistent with the Constitution, it is holding that the provision was unconstitutional from the outset, not that it is newly invalid upon the entry of final judgment. *See Chicago, I. & L. Ry. Co. v. Hackett*, 228 U.S. 559, 566 (1913) ("Th[e] act was therefore as inoperative as if it had never been passed, for an unconstitutional act is not a law, and can neither confer a right or immunity nor operate to supersede any existing valid law."); *see also Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993) (confirming that when the Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Court's] announcement of the rule").

*AAPC*'s holding that the government-debt exception was unconstitutional and thus "as inoperative as if it had never been passed," *Hackett*, 228 U.S. at 566, means that the exception was always invalid and was therefore "powerless to work any change in the existing statute," even for a period of time, *Frost*, 278 U.S. at 526-27. The Court's holding that the exception was severable from the remainder of the statute likewise "is

a question of interpretation and of legislative intent." *Dorchy v. Kansas*, 264 U.S. 286, 290 (1924); *see Lidas, Inc. v. United States*, 238 F.3d 1076, 1080 (9th Cir. 2001) (question of severability "is essentially an inquiry into legislative intent" (quoting *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 191 (1999)). The *AAPC* plurality explained that the Communications Act's severability clause "squarely covers the unconstitutional government-debt exception and requires that we sever it," 140 S. Ct. at 2352, and observed that "the remainder of the robocall restriction did function independently and fully operate as a law for 20-plus years before the government-debt exception was added in 2015," *id.* at 2353. *See also id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J.) (concurring in judgment with respect to severability and dissenting in part).

In concluding that the exception was severable from the remainder of the statute, the Court said what the TCPA has always meant, not what it meant as of the date of the Court's decision. *See Rivers*, 511 U.S. at 312-13, 313 n.12. Accordingly, there was never a time when the exception was invalid but not severed; by operation of law, the exception has been both invalid and severed since the date of its enactment, and defendant may be held liable under the valid remainder of the statute. *Cf. United States v. Miselis*, 972 F.3d 518, 547 (4th Cir. 2020) (holding that defendants could be convicted for violating portions of the Anti-Riot Act that the court held were valid and severable from provisions found to violate the First Amendment).

**B. Defendant's Countervailing Arguments Are Meritless**

Although Defendant raises several arguments in an attempt to avoid liability, they do not provide a basis for this Court to depart from the traditional understanding of severance principles.

**1.** Defendant's principal contention is that the *AAPC* Court understood itself to be holding the entire autodialer restriction – not just the government-debt exception – unconstitutional for a period of time. *See* Def. Br. at 5-10; Def. Reply at 10-11. But this

1    contention disregards *AAPC*'s conclusion that the government-debt exception did not

2    render "the entire 1991 robocall restriction unconstitutional," 140 S. Ct. at 2349 (plural-

3    ity op.); *see id.* at 2362 (Breyer, J.) (concurring in judgment in part and dissenting in part)

4    (agreeing that "the government-debt exception provides no basis for undermining the

5    general cell phone robocall restriction"), and the plurality's admonishment that its opin-

6    ion "does not negate the liability of parties who made robocalls" prior to the Court's

7    decision, *id.* at 2355 n.12.

8         Thus, while Defendant correctly notes that unconstitutional laws are void, *see* Def.

9    Br. at 6, Defendant incorrectly seeks to apply that principle to the overall autodialer

10   restriction (which was constitutional when enacted) rather than the government-debt

11   exception. The *AAPC* Court made clear that the statute's only constitutional defect

12   stemmed from the government-debt exception. *See, e.g.*, *AAPC*, 140 S. Ct. at 2352 ("En-

13   acted in 2015, the government-debt exception added an unconstitutional discriminatory

14   exception to the robocall restriction."); *see also id.* at 2353 (describing the government-

15   debt exception as "the constitutionally offending provision"). Accordingly, it is only the

16   government-debt exception that should be deemed ineffective from its enactment,

17   meaning that this amendment had no effect on the already-existing and constitutional

18   autodialer restriction.[3] *See supra.* This result is also faithful to the *AAPC* plurality's ad-

19   monition that litigants should not be able to undermine an entire regulatory scheme

20   merely because one of its marginal provisions is unconstitutional. *See AAPC*, 140 S. Ct.

21

22

23

---

24        [3] Defendant argues that the *AAPC* Court cannot have meant to strike down
     only the government-debt exception because that exception does not itself restrict
25   speech, *see* Def. Reply at 16, but that is incorrect. The *AAPC* Court made clear that the
     constitutional problem at issue was differential treatment among different types of
26   speech. That constitutional problem was remedied by removing the government-debt
     exception – which was the source of the differential treatment – even though the ex-
27   ception itself did not restrict speech. *See, e.g.*, *AAPC*, 140 S. Ct. at 2354.

28

at 2351 (plurality op.) ("Constitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute.").

Moreover, to hold otherwise would lead to substantial logistical difficulties. Before the Supreme Court decided *AAPC*, two circuits had struck down the government-debt exception but held it severable from the remainder of the statutory scheme. *See Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019); *AAPC v. FCC*, 923 F.3d 159 (4th Cir. 2019). Presumably, under Defendant's theory, a defendant would therefore be liable for violating the autodialer restriction for calls made within the Fourth and Ninth Circuits following those appellate decisions but not for violations of the statute in other circuits until after the Supreme Court decided *AAPC*, notwithstanding the interstate nature of the regulated activity. That result underscores the problems inherent in Defendant's position.

**2.** Defendant asks this Court to ignore the *AAPC* plurality's statement that the decision "does not negate the liability of parties who made robocalls" prior to the Court's decision, 140 S. Ct. at 2355 n.12, arguing that this statement is non-binding dicta. *See* Def. Br. at 11-13; Def. Reply at 12-13. Although it is true that this footnote appeared in an opinion signed by only three Justices, neither of the opinions expressly concurring with respect to severability disagreed with the footnote's conclusion that robocallers who violated the clearly constitutional autodialer restriction during the relevant time period should still be liable for those violations of that provision. *See AAPC*, 140 S. Ct. at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J., concurring in judgment with respect to severability and dissenting in part). And as explained above, allowing liability for entities like Defendant would be consistent with the Supreme Court's treatment of similar instances in which the Court upheld liability for violations of an underlying, lawful provision even after an unconstitutional amendment has later been enacted. *See Eberle*, 232 U.S. at 705; *Jackson*, 390 U.S. at 591.

The Court may also easily reject Defendant's argument that the plurality's statement in the footnote "is most reasonably interpreted as referring to only past *judgments*." Def. Br. at 13. The language in the footnote is unrestricted: by its terms it applies to all "parties who made robocalls covered by the robocall restriction." *AAPC*, 140 S. Ct. at 2355 n.12. Defendant identifies nothing in *AAPC* that can reasonably be read to limit this statement's applicability to final judgments.

**3.** Defendant suggests that it would work a "fundamental unfairness" to "impos[e] penalties for violations of a content-discriminatory speech restriction that was concededly unconstitutional – and thus 'void' – when the alleged violations occurred." Def. Br. at 9. But any liability imposed on Defendant would stem from violations of the autodialer restriction, which as discussed, was fully constitutional at all relevant times. Moreover, Defendant cannot claim that its activities were prejudiced in any way. The autodialer restriction was passed approximately thirty years ago and has applied to entities like Defendant since its enactment. Defendant cannot complain that it was unaware of the TCPA's prohibitions at the time it undertook the actions that are the subject of the present complaint. For these reasons, Defendant's reference to the Ex Post Facto Clause is irrelevant. *See* Def. Reply at 16-17. The autodialer restriction had been enacted long before Defendant's alleged violations of the TCPA, and was fully operative at the time of Defendant's purportedly unlawful calls, so the Ex Post Facto Clause and related provisions simply have no applicability here.

Nor is it unfair for the Supreme Court plurality to recognize that debt collectors should not be held liable for calls made to collect government debt prior to *AAPC*, while at the same time upholding liability for other robocallers during that time period. Defendant suggests doing so would amount to impermissible discrimination based on the content of speech. Def. Br. at 8, 10. That is incorrect. Holding debt collectors liable for calls made after the passage of the amendment but prior to the Court's decision in *AAPC* would implicate the "fundamental principle . . . that laws which regulate persons

or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *cf.* Model Penal Code § 2.04(3)(b)(i) (providing a defense to criminal liability when a defendant "acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in . . . a statute or other enactment"). Thus, even though the government-debt exception was invalid from its inception and never had effect, it does not follow that debt collectors should be penalized for reasonably relying on its enactment. Any differential treatment between debt collectors and other robocallers would not be based on preferential treatment of favored speech, but rather would follow from the fact that certain callers had fair notice of potential liability while others did not. That distinction is undisputedly content neutral.

**4.** Defendant cites *Grayned v. City of Rockford*, 408 U.S. 104 (1972), for the proposition that liability turns on "whether the offending statute was constitutional at the time the violation occurred, not whether it has subsequently been cured by judicial or legislative action." Def. Br. at 9. But *Grayned* is distinguishable from the circumstances here. In *Grayned*, the petitioner had been convicted of violating a content-based, anti-picketing ordinance. Following his conviction, the ordinance was amended to omit the exception that had rendered the law content-based. In a footnote, the *Grayned* Court noted that the amendment "has, of course, no effect" on the validity of the petitioner's conviction because the Court "must consider the facial constitutionality of the ordinance in effect when appellant was arrested and convicted." 408 U.S. at 107 n.2.

Unlike in *AAPC*, the Court gave no indication in *Grayned* that the statute's content-based exception was severable from the remainder of the statute. There is no indication that the provision contained a severability clause like the one found in the Communications Act, and the Court noted no legislative history indicating that the legislature would have enacted the general prohibition on picketing without the offending exception. Accordingly, the anti-picketing provision as a whole was invalid as enacted, and the

Court held that Grayned could not be convicted under that unconstitutional provision.[4] By contrast, *AAPC* confirms that the autodialer restriction was valid when enacted and that the government-debt exception was severable and did not undermine the validity of the restriction. 140 S. Ct. at 2349, 2353 (plurality op.). *Grayned* therefore provides no basis for allowing Defendant to avoid liability in these circumstances, in which the alleged misconduct violated a valid restriction. *See Miselis*, 972 F.3d at 547.[5]

**5.** Defendant argues that if it and similarly-situated entities can be liable for calls made before *AAPC*, but government-debt collectors cannot be held liable for calls made during this time, then that would mean "the political party in power could pass similar unconstitutional exceptions to favor its own preferred speech, knowing it could only be penalized on a prospective basis once a challenge reached the Supreme Court." Def. Br. at 10. Defendant identifies no such provision that has ever been enacted, and Defendant's speculation provides no reason for this Court to ignore the *AAPC* plurality's clear statement that robocallers may be liable for calls made before the government-debt exception's severance, or the substantial precedent supporting that conclusion.

---

[4] The *Grayned* Court struck down the ordinance at issue after noting that it was "identical" to a Chicago ordinance that had been invalidated the same day in *Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972). *See Grayned*, 408 U.S. at 107. In contrast to *AAPC*, the *Mosley* Court held that the content-based exception called into doubt the validity of the *entire* restriction. 408 U.S. at 100 ("If peaceful labor picketing is permitted, there is no justification for prohibiting all nonlabor picketing, both peaceful and nonpeaceful.").

[5] Defendant also cites *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017), noting that there the Supreme Court had stated that a "defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity." Def. Br. at 9 (quoting *Morales-Santana*, 137 S. Ct. at 1699 n.24). But the quoted section from *Morales-Santana* primarily discussed *Grayned*, which is distinguishable from the situation here for the reasons explained above. Moreover, the *AAPC* plurality was well aware of this case, *see AAPC*, 140 S. Ct. at 2354 (citing *Morales-Santana*), but nonetheless stated shortly after this citation that *AAPC* "does not negate the liability of parties who made robocalls" prior to that decision. 140 S. Ct. at 2355 n.12.

6. Defendant's reliance on *Seila Law, LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), is misplaced. *See* Def. Br. at 14-16. The Court in *Seila Law* held that a provision limiting the President's authority to remove the director of the Consumer Financial Protection Bureau was unconstitutional but severable from the remainder of the statute. 140 S. Ct. at 2203-04, 2211. The Court then remanded for consideration of whether the agency decision at issue, which had been made at a time when the director believed his decisions were insulated by the statute's removal protections, had been validly ratified. *Id.* at 2211.

In *Seila Law*, the Court's severability analysis proceeded just as it did in *AAPC*, with the court identifying the source of the constitutional problem and severing the invalid provision while leaving the remainder of the statute in place. However, because the agency decision at issue in *Seila Law* was made during the time when the director presumably believed that the removal protections were in effect, *see* 140 S. Ct. at 2195, *Seila Law* raised separate remedial questions with respect to that agency action. Because this case involves no agency action, there is no analogous remedial question. Unlike a case challenging the decision of an agency actor whose decision might have been influenced by reliance on unconstitutional removal protections (even if those protections would later prove unenforceable), here there can be no question that Congress intended entities that violated the autodialer restriction to be liable for those infractions.

Moreover, the situation here is further distinguished due to the fact that the statute at issue in *Seila Law* contained the unconstitutional for-cause removal provision upon its enactment. *Id.* at 2193; *see* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1011(b)(3), 124 Stat. 1376, 1964 (2010). In contrast, the autodialer restriction was passed in 1991 and the unconstitutional government-debt exception was added by separate statute approximately 25 years later. It was only that later amendment that was deemed unconstitutional, and as discussed above, the Supreme

Court has held that when a later amendment to a statute is found unconstitutional, entities who violate the original statute may still be held liable according to its terms. *See, e.g.*, *Eberle*, 232 U.S. at 705; *Jackson*, 390 U.S. at 591.

Finally, *Seila Law* was issued just days before *AAPC*, and indeed was cited multiple times in *AAPC*, *see, e.g.*, 140 S. Ct. at 2349, and yet three Justices explicitly stated that the severance of the government-debt exception "does not negate the liability of parties who made robocalls" prior to the Court's decision, 140 S. Ct. at 2355 n.12, and none of the opinions concurring with respect to severance disputed that conclusion.[6] If *Seila Law* required the result Defendant argues for here, one would have expected the *AAPC* Court to have said so.

**7.** Defendant's attempt to distinguish *Frost* and *Eberle* should be rejected. Defendant argues that in those cases "the amendments themselves were held to be void." Def. Reply at 15 (emphasis removed). But as discussed above, that is precisely what happened in *AAPC*. Indeed, the *AAPC* plurality noted that "[t]he Court has long applied severability principles in cases like this one, where Congress added an unconstitutional amendment to a prior law," and cited *Frost* for the proposition that "[i]n those cases, the Court has treated the original, pre-amendment statute as the 'valid expression of the legislative intent.'" *Id.* at 2353 (quoting *Frost*, 278 U.S. at 526-27).

---

[6] In its discussion of *Seila Law*, Defendant appends a citation to a Federal Circuit opinion concurring in the denial of rehearing en banc, for the proposition that "judicial severance of one portion of an unconstitutional statute is, by necessity, only applicable prospectively." *See* Def. Br. 16 (citing *Arthrex, Inc. v. Smith & Nephew Inc.*, 953 F.3d 760, 767 n.2 (Fed. Cir.) (O'Malley, J., concurring), *cert. granted sub nom. United States v. Arthrex, Inc.*, 141 S. Ct. 549 (2020)). Like *Seila Law*, *Arthrex* involved questions of the proper remedy after finding that agency actors had purportedly been subject to unconstitutional removal protections, *see id.* at 766, and thus is likewise distinguishable. Moreover, the *Arthrex* concurrence of course cannot displace Supreme Court precedent holding that the Court's construction of a statute does not "change" the law, *see Rivers*, 511 U.S. at 312-13, 313 n.12, or that that the Court's interpretation of a law must be given retroactive effect in all pending cases, *see Harper*, 509 U.S. at 97.

Nor are *Frost* and *Eberle* distinguishable on the ground that they did not involve a First Amendment-based challenge. *See* Def. Reply at 15 n.6. The question here concerns how a constitutional statute is affected by a later, unconstitutional amendment. Cases like *Eberle*, *Frost*, and *Jackson* – as well as the plurality in *AAPC* – all indicate that the original statute is unaffected by the unconstitutional amendment, and none of these authorities indicate that conclusion would change if the amendment had been struck down under the First Amendment instead of some other constitutional provision.

## CONCLUSION

For the foregoing reason, Defendant's constitutional challenge should be rejected.

DATED:  April 6, 2021                    By: */s/ Joshua C. Abbuhl*
                                             JOSHUA C. ABBUHL

                                         BRIAN M. BOYNTON
                                         Acting Assistant Attorney General

                                         ERIC R. WOMACK
                                         Assistant Director, Federal Programs Branch

                                         JOSHUA C. ABBUHL
                                         Trial Attorney (D.C. Bar No. 1044782)
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L St. NW
                                         Washington, D.C. 20005
                                         (202) 616-8366 (tel.)
                                         (202) 616-8470 (fax)
                                         Joshua.Abbuhl@usdoj.gov

                                         *Counsel for the United States of America*